IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ERIC L.,                                        :
                                                :
                    **Plaintiff,**              :
                                                :
     v.                                         :     **Case No. 2:25-cv-00709**
                                                :     **Judge Edmund A. Sargus, Jr.**
                                                :     **Magistrate Judge S. Courter M. Shimeall**
                                                :
COMMISSIONER OF                                 :
SOCIAL SECURITY,                                :
                                                :
                    **Defendant.**              :

## REPORT AND RECOMMENDATION

Plaintiff, Eric L., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI"). This matter is before the Court for a Report and Recommendation on Plaintiff's Statement of Errors. (ECF No. 9.) The Undersigned **RECOMMENDS** that the Court **REVERSE** the Commissioner of Social Security's nondisability finding and **REMAND** this case to the Commissioner and the administrative law judge ("ALJ") under Sentence Four of § 405(g).

## I.     PROCEDURAL BACKGROUND

Plaintiff applied for SSI on February 6, 2020, alleging disability as of January 1, 2016, due to anxiety, manic depression, bi-polar disorder, obsessive compulsive disorder ("OCD"), and insomnia. (ECF No. 7, PAGEID ##: 399–404, 441.)[1]  Plaintiff's application was denied initially

---

[1] Plaintiff previously applied for SSI on January 12, 2016, which was denied by administrative decision on May 29, 2018. (ECF No. 7, PAGEID ##: 150−64).  The Appeals Council declined jurisdiction

on May 18, 2020, and upon reconsideration on August 3, 2020. Thereafter, Plaintiff appeared, with counsel, before an ALJ on March 19, 2021. (*Id.* at PAGEID ##: 130−48.) On June 30, 2021, that ALJ issued a decision finding that Plaintiff was not disabled under the Social Security Act. (*Id.* at PAGEID ##: 180–200.) The Appeals Council granted Plaintiff's request for review and remanded the matter for further proceedings. (*Id.* at PAGEID ##: 201−06.) On remand, the claim was assigned to a different ALJ, who held two hearings in January and July 2024. (*Id.* at PAGEID ##: 59−101, 103−29.) The ALJ on remand issued a decision denying Plaintiff's application on July 26, 2024. (*Id.* at PAGEID ##: 36−58).

The ALJ Winfrey the five-step sequential process to evaluate Plaintiff's SSI application.[2]

---

on June 9, 2016. (*Id.* at PageID ##: 207−13.)

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.  Is the claimant engaged in substantial gainful activity?

2.  Does the claimant suffer from one or more severe impairments?

3.  Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4.  Considering the claimant's residual functional capacity, can the claimant perform his or his past relevant work?

5.  Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009).

- Step One: The ALJ found that Plaintiff has not engaged in substantial gainful activity since February 5, 2020, the application date. (ECF No. 7, PAGEID #: 42.)

- Step Two: The ALJ found that Plaintiff has the following severe impairments: mood disorder unspecified; obsessive compulsive disorder; and personality disorder unspecified. (*Id.* at PAGEID #: 43.)

- Step Three: The ALJ further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at PAGEID #: 44.)

Before proceeding to Step Four, the ALJ set forth Plaintiff's residual functional capacity

("RFC") as follows:

> [Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: the individual can perform simple, routine tasks; up to frequent interaction with supervisors and coworkers; no more than incidental interaction with the public; would be limited to the straightforward exchange of information, without negotiation, persuasion, conflict resolution, close teamwork, tandem work, or over the shoulder supervision; work duties would not include supervising others; and no work duties in which the individual would be directly responsible for public safety.

(*Id.* at PAGEID #: 46.)

- Step Four: The ALJ determined that Plaintiff has no past relevant work. (*Id.* at PAGEID ##: 50–51.)

- Step Five: The ALJ concluded that—when considering his age, education, work experience, RFC, and in reliance on the Vocational Expert's testimony—there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as a hand packager, janitor, or laundry worker. (*Id.* at PAGEID ##: 51–52.)

The ALJ therefore concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since February 5, 2020. (*Id.* at PAGEID #: 52.) The Appeals Council denied Plaintiff's request for review on May 1, 2025. (*Id.* at PAGEID ##: 23–27.) This appeal followed.

## II.        RELEVANT RECORD EVIDENCE

The Undersigned has reviewed the portions of the administrative record relevant to the claimed errors raised by Plaintiff. Rather than summarizing that information here, the Undersigned will refer and cite to it as necessary in the discussion of the parties' arguments.

## III.       STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "[s]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.

1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices [Plaintiff] on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV.      ANALYSIS

Plaintiff raises two contentions of error: (1) the ALJ erred in evaluating the opinion of Melinda Lutz, LISW; and (2) the ALJ erred in evaluating the medical opinion evidence of Timothy Lloyd Ickes, PA-C.  (ECF No. 9, PAGEID ##: 1033−37.)  The Undersigned finds Plaintiff's second contention of error to be well-taken.[3]

### A.      Mr. Ickes's Opinion

Plaintiff contends that the ALJ erred when evaluating the medical opinion of Mr. Ickes. Specifically, Plaintiff contends that the ALJ erred when addressing the supportability and consistency factors.[4]  The Undersigned agrees as to the supportability factor.

---

[3] This finding obviates the need for in-depth analysis of Plaintiff's remaining assignment of error. Thus, the Undersigned need not, and does not, resolve whether Plaintiff's alternative basis supports reversal and remand.  Nevertheless, on remand, the ALJ may consider Plaintiff's remaining assignment of error if appropriate.

[4] In his contention of error regarding the ALJ's evaluation of Mr. Ickes's opinion, Plaintiff contends that "similar to the argument [regarding the ALJ's evaluation of Ms. Lutz's opinion], the ALJ made similar mistakes in rejecting Ickes' opinions." (ECF No. 9, PAGEID #: 1037.)  As to Ms. Lutz, Plaintiff challenges both the ALJ's evaluation of the supportability and consistency factors.  (*Id.* at 1033−34.)  The Commissioner argues that the ALJ adequately evaluated the supportability and consistency factors for Mr. Ickes's opinion.  Accordingly, the Court construes Plaintiff's contention of error regarding the ALJ's evaluation of Mr. Ickes's opinion as challenging both the supportability and consistency factors.

The governing regulations describe five different categories of evidence: (1) objective medical evidence; (2) medical opinions; (3) other medical evidence; (4) evidence from nonmedical sources; and (5) prior administrative medical findings. 20 C.F.R. § 416.913(a)(1)–(5). Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [Plaintiff]'s medical sources." 20 C.F.R. § 416.920c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." 20 C.F.R. § 416.920c(c)(1)–(5). Supportability and consistency are the most important of the five factors, and the ALJ must explain how they were considered. 20 C.F.R. § 416.920c(b)(2).

The supportability factor recognizes that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 416.920c(c)(1). "Therefore, an ALJ's supportability analysis addresses whether a medical professional has sufficient justification for their *own* conclusions." *Amy G. v. Comm'r of Soc. Sec. Admin.*, No. 2:24-CV-01151, 2025 WL 455378, at *6 (S.D. Ohio Feb. 11, 2025), *report and recommendation adopted*, No. 2:24-CV-01151, 2025 WL 807771 (S.D. Ohio Mar. 14, 2025).

6

"ALJs must provide a 'minimum level of articulation . . . to provide sufficient rationale for a reviewing adjudicator or court.'" *Farrah W. v. Comm'r of Soc. Sec.*, No. 3:22-cv-374, 2024 WL 514496, at *8 (S.D. Ohio 2024) (citation omitted).  This analysis does not "require those explanations to contain a specific level of detail, but instead contemplate[s] that the appropriate level of articulation will necessarily depend on the unique circumstances of each claim." *Timothy B. v. Comm'r of Soc. Sec.*, No. 2:22-cv-3834, 2023 WL 3764304, at *7 (S.D. Ohio June 1, 2023) (internal quotations omitted).  However, "it is the obligation of the ALJ 'in the first instance to show his or her work, *i.e.*, to explain in detail *how the factors actually were applied* in each case, to each medical source.'" *Scott K. v. Comm'r of Soc. Sec.*, No. 3:21-cv-129, 2022 WL 4484603, at *4 (S.D. Ohio Sept. 27, 2022) (citing *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 909 (E.D. Mich. 2021)).

> Here, the ALJ concluded that Mr. Ickes's opinion was "not persuasive," explaining:

> [T]he opinion of Mr. Ickes is not persuasive as it is neither consistent with nor supported by the broader record. In particular, the extreme limitations identified therein are not consistent with some of the normal mental status examination findings, the situational nature of the claimant's mental complaints, the reported benefit from treatment including reports that he was doing "okay" and that his mental condition had significantly improved with greater socialization, spending time with his family, exercising, staying active, and mowing lawns. Furthermore, the medical expert testified that this opinion was not consistent with the broader record, which instead supported no more than moderate limitation in any mental domain.

(ECF No. 7, PAGEID #: 50.)  The only discussion of support is the ALJ's comment that Mr. Ickes's opinion is "neither consistent with nor supported by the broader record."  (*Id.*)  "But fundamentally, this conflates consistency with supportability.  Said differently, the ALJ discussed the consistency factor by comparing [Mr. Ickes's] opinion with the record as a whole." *Melinda*

*D. v. Comm'r of Soc. Sec.*, No. 2:24-CV-3871, 2025 WL 227159, at *6 (S.D. Ohio Jan. 17, 2025). But the ALJ did not discuss supportability by referencing any explanations or evidence underlying Mr. Ickes's opinion, and this omission constitutes error. *See, e.g.*, *William G. v. Comm'r of Soc. Sec.*, No. 2:22-cv-213, 2022 WL 4151381, at *8 (S.D. Ohio Sept. 13, 2022) (finding the ALJ did not properly analyze supportability where his comments merely compared the medical source's opinion with the record as a whole), *report and recommendation adopted*, No. 2:22-cv-213, 2022 WL 16745337 (S.D. Ohio Nov. 7, 2022); *Crystal E. J. v. Comm'r of Soc. Sec.*, No. 2:21-cv-4861, 2022 WL 2680069, at *7–8 (S.D. Ohio July 12, 2022) (stating comparisons to the record as a whole go only to the consistency of an opinion, not supportability), *report and recommendation adopted*, No. 2:21-cv-4861, 2022 WL 2974734 (S.D. Ohio July 27, 2022).

The Commissioner counters that the ALJ's earlier discussion of Mr. Ickes's examinations of Plaintiff are sufficient. (ECF No. 13, PAGEID #: 1067.) The Commissioner appears to contend that the ALJ's statement that "the extreme limitations identified [in Mr. Ickes's opinion] are not consistent with some of the normal mental status examination findings" was in reference to Mr. Ickes's treatment records that the ALJ discussed earlier in his opinion. (*Id.* (arguing that the ALJ noted that "Mr. Ickes' examinations also showed normal findings . . . ." and citing to the ALJ's earlier discussion of Mr. Ickes's treatment records).) But the ALJ never made that point, and the ALJ does not cite to specific records when dismissing Mr. Ickes's opinion. And, as the Commissioner acknowledges, the record contains mental status examinations from other providers, such as Ms. Lutz. (*Id.* at PAGEID #: 1062.) Further, the Commissioner's argument is undermined by the Commissioner's contention that the same statements from the ALJ's opinion

8

go towards both the supportability and consistency analysis.  For example, although the Commissioner argues that the ALJ's statement that "the extreme limitations identified [in Mr. Ickes's opinion] were not consistent with some of the normal mental status examination findings" goes towards the supportability analysis, the Commissioner later contends that the ALJ adequately performed the consistency analysis because the ALJ found that Mr. Ickes's opinion "was inconsistent with some of the normal mental status examinations in the record."  (*Id.* at PAGEID ##: 1067–68.)  The Commissioner, like the ALJ, improperly conflates the supportability and consistency factors.

The Commissioner further contends that "[t]he record shows that Mr. Ickes only treated Plaintiff with medication" and that "Mr. Ickes' normal examination findings coupled with conservative treatment did not support his extreme limitations."  (*Id.* at PAGEID #: 1067.)  But the ALJ never discussed Mr. Ickes's treatment methods as a basis for rejecting his opinion and, as discussed, it is unclear from the ALJ's discussion whether the ALJ is referencing the mental status examinations of Mr. Ickes or another provider.  "In essence, the Commissioner's argument asks this Court to affirm the ALJ's decision based on *post hoc* rationalizations instead of the 'basis articulated by'" the ALJ himself.  *Melinda D.*, 2025 WL 227159, at *7 (quoting *Johnson v. Comm'r of Soc. Sec.*, 193 F. Supp. 3d 836, 847 (N.D. Ohio 2016)).

In short, by not explaining how he considered the factor of supportability when evaluating Mr. Ickes's opinion, the ALJ failed to meet the minimum levels of articulation required by the regulations.  Without the ALJ's proper articulation of the supportability factor, the Court cannot

trace the ALJ's path of reasoning.  And, as a result, the Court's ability to determine whether the ALJ's conclusions were supported by substantial evidence has been frustrated.

The ALJ's failure to comply with a legal requirement constitutes reversible error, as the error was not harmless and instead prejudiced Plaintiff on the merits.  *See Rabbers*, 582 F.3d at 654.  Accordingly, Plaintiff's claim of error is well-taken and a remand is justified.

## V.      CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.  For these reasons, it is therefore **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and that this action be **REMANDED** under Sentence Four of § 405(g).

## VI.     PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816*,* 829 (6th Cir. 2007) (holding that "failure to object to the magistrate

judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**IT IS SO ORDERED.**

*/s/ S. Courter M. Shimeall*
**S. COURTER M. SHIMEALL**
**UNITED STATES MAGISTRATE JUDGE**